UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**CYNTHIA JOY MCCLARIGAN,**

        *Plaintiff*,

v.                                          Case No.

**RIVERSIDE HOSPITAL, INC.
a/k/a RIVERSIDE REGIONAL MEDICAL CENTER,**

        *Defendant*.

**Serve: Registered Agent
      Jason O. Houser
      Fountain Plaza One,
      701 Town Center Drive, Suite 1000
      Newport News, VA 23606**

## COMPLAINT

Cynthia McClarigan ("Ms. McClarigan") brings this action against Riverside Hospital, Inc. ("Riverside") under the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*.

### Parties

1. Ms. McClarigan is a citizen of the Commonwealth of Virginia.

2. The Defendant Riverside is a Virginia corporation with a principal place of business located at 500 J. Clyde Morris Blvd., Newport News, Virginia 23601.

### Jurisdiction, Exhaustion of Administrative Prerequisites, and Venue

3. Jurisdiction lies properly in this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).

4. Ms. McClarigan previously filed her administrative charge concurrently with the Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of the Attorney General, Division of Human Rights. **Exhibit A.**

5.	The EEOC issued Ms. McClarigan a right-to-sue letter dated August 30, 2021.

**Exhibit B**

6.	This action is filed within 90 days of Ms. McClarigan's receipt of her right-to-sue letter.

7.	Venue lies properly in this division and district pursuant to 42 U.S.C. §2000e-5(f)(3), in that the acts complained of took place in the Newport News Division of the Eastern District of Virginia.

## Facts

8.	On September 30, 2020, Ms. McClarigan was fired by her employer, Riverside, because of her disability, in violation of the Americans with Disabilities Act (the "ADA").

9.	Riverside employed 15 or more employees for each working day in each of 20 or more calendar weeks in 2020 and/or 2021. Riverside is considered an employer for the purposes of the ADA.

10.	Ms. McClarigan was employed as a Circulating Nurse for Riverside at all times pertinent to this Complaint.

11.	Towards the end of January of 2020, Ms. McClarigan began experiencing symptoms of shortness of breath, difficulty breathing, excessive fatigue, insomnia, sleep issues (including extreme difficulty in waking up), and night sweats.

12.	Ms. McClarigan's symptoms and condition surrounding shortness of breath, fatigue, insomnia, and other sleep issues qualify as a disability as defined by the ADA. Ms. McClarigan's symptoms interfered with her ability to complete major life activities such as breathing, falling asleep, staying asleep, and waking up from sleep in the morning.[1]

---

[1] As an example of how Ms. McClarigan's shortness of breath constituted a disability, one episode of this shortness of breath sent Ms. McClarigan to the hospital by ambulance in July

13. Ms. McClarigan began seeking treatment for her sleep-related symptoms and conditions in June of 2020 and scheduled an appointment with a neurologist, Dr. Harding, for July 9, 2020.

14. Ms. McClarigan did not at that time seek treatment for her shortness of breath symptoms. She had not yet been diagnosed with Catamenial Pneumothorax; she thought her shortness of breath symptoms were caused by allergies; and she so advised her manager at Riverside in or about July of 2020.

15. Following the July 9, 2020 appointment, Ms. McClarigan's neurologist, Dr. Harding, provided a note for Riverside stating that Ms. McClarigan was under his care for the sleep-related symptoms/conditions and required testing. Dr. Harding advised that he was still running tests to make a diagnosis.

16. On July 10, 2020, Ms. McClarigan spoke with her manager regarding the symptoms she was experiencing. She had not yet been diagnosed with what she thought at the time was a sleep disorder, and the treatment she was receiving from Dr. Harding, but her manager informed her that she could not accept the note from Dr. Harding.

17. Ms. McClarigan participated in a sleep study overnight on August 25, 2020 into August 26, 2020, but the results were such that Dr. Harding ordered another study.

---

2020 because she thought she was having a heart attack. It felt like her chest was being crushed and she could barely breathe. She forced the EMT's to give her oxygen in the ambulance even though that is no longer procedure for suspected heart attacks. She was late to work that next morning and when she told the Riverside director (whose first name was Kim) and her Riverside manager (whose first name was Emily) what happened and that she was still dizzy and her breathing did not feel right, Kim said: "Oh my gosh, why didn't you just stay home if you're feeling that bad"; to which Ms. McClarigan replied, "I can't stay home because I'll get fired." Neither Kim nor Emily corrected her and told her she was wrong.

So, while Ms. McClarigan's description of her condition as "shortness of breath" may sound benign, her attacks could actually be life-threatening and disabling.

18.     Ms. McClarigan subsequently found out, after Riverside fired her, that her shortness of breath symptoms listed above were not being caused by allergies; and her sleep-related symptoms were not being caused by a sleep disorder; rather, the both sets of symptoms (the shortness of breath and the sleep-disorder symptoms) were actually being caused by a single condition: Catamenial Pneumothorax. She was diagnosed with this condition in or about March of 2021.

19.     While Ms. McClarigan did not know in the July 2020 timeframe that her symptoms were caused by a Catamenial Pneumothorax, Ms. McClarigan did inform her Riverside manager of her shortness of breath symptoms (attributing them to an allergy), sleep symptoms/condition, the ongoing treatment for her symptoms/condition, and the effect that her symptoms were having on her ability to attend work on time on the mornings that she suffered such symptoms.

20.     Ms. McClarigan's shortness of breath symptoms and sleep-related symptoms, subsequently determined to have been caused by a Catamenial Pneumothorax, caused her to be late to work on multiple occasions, due to the excessive fatigue causing her to oversleep and the shortness of breath she experienced.

21.     Ms. McClarigan requested a reasonable accommodation from Riverside following her struggle with these shortness of breath and sleep symptoms.

22.     Specifically, Ms. McClarigan requested that the start of her shifts at Riverside occur later in the day to account for her shortness of breath and troubles waking up in the morning.

23.     Riverside refused to make reasonable accommodations for Ms. McClarigan and her shortness of breath and sleep-related symptoms/condition. Riverside refused to engage in any

interactive process with Ms. McClarigan about any reasonable accommodations she could be provided so that she could continue to do her job. Riverside failed to demonstrate any good faith efforts, in consultation with Ms. McClarigan, who informed Riverside that accommodation for her disability was needed, to identify and make a reasonable accommodation that would provide Ms. McClarigan with an equally effective opportunity and would not cause an undue hardship on the operation of the business.

24. Riverside fired Ms. McClarigan on September 30, 2020.

25. Riverside's cited reason for firing Ms. McClarigan was her repeated tardiness to work - the direct results of the symptoms of the debilitating and disabling symptoms of her conditions. Therefore, she was fired due to her disability without Riverside ever approaching Ms. McClarigan to discuss her requested accommodations.

26. Riverside ignored Ms. McClarigan's report of symptoms of her condition and request for accommodations.

27. Prior to her struggle with her shortness of breath and sleep-related symptoms/condition, Ms. McClarigan received positive reviews on her job performance from her supervisors with Riverside.

COUNT I
Violation of 42 U.S.C. §§ 12101 *et seq.*
**Disability Discrimination**

28. Ms. McClarigan incorporates by reference the factual assertions in ¶¶1-27 *supra*.

29. To set forth a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that (1) she has a disability; (2) she is otherwise qualified for the job in question; and (3) she was discharged solely because of his disability. *Halperin v. Abacus Tech.*

*Corp.*, 128 F.3d 191, 197 (4th Cir. 1997) (*Citing Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995).

30. A disability under the ADA is defined as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. *See* 42 USCS § 12102.

31. Major life activities under the ADA include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, ***sleeping***, walking, standing, lifting, bending, speaking, ***breathing***, learning, reading, concentrating, thinking, communicating, and working." *See* 42 USCS § 12102 (emphasis added).

32. Ms. McClarigan began experiencing symptoms originally in January of 2020 thought to be from allergies and a sleep disorder, but which later (after she was fired) was determined to be from a Catamenial Pneumothorax.

33. Ms. McClarigan's symptoms described above interfered with her ability to complete major life activities such as breathing, falling asleep, staying asleep, and waking up from sleep in the morning.

34. Ms. McClarigan was otherwise qualified for her position as a Circulating Nurse. She received positive evaluations in her time with Riverside; even on an evaluation dealing with her absenteeism, her evaluator noted that: "Cynthia is a hard worker who strives to provide excellent care to all of her patients." There was never any indication from Riverside that Ms. McClarigan was not otherwise qualified in her position as a Circulating Nurse.

35. Further to the issue of being otherwise qualified for her position, Ms. McClarigan had previously been assigned to the operating room of a Dr. Newcomb, who was conducting surgery using robotic techniques. Ms. McClarigan was then transferred to be the circulating

nurse in another operating room with a Dr. Wey. Riverside told Ms. McClarigan that she was transferred to Dr. Wey's operating room because "they needed a more experienced nurse" in Dr. Wey's operating room. Ms. McClarigan was the nurse chosen when a particular operating room needed an experienced nurse. This shows that Ms. McClarigan was performing up to expectations in her job.

36. Riverside terminated Ms. McClarigan following, and as a direct result of, a series of late arrivals to work which came after the start of and were singly caused by Ms. McClarigan's disabling symptoms.

37. Riverside terminated Ms. McClarigan approximately eight (8) weeks after being apprised of Ms. McClarigan's debilitating and disabling symptoms of her condition.

38. Riverside terminated Ms. McClarigan with no response to Ms. McClarigan's request for reasonable accommodations.

39. Riverside's terminating Ms. McClarigan was done willfully and knowingly in violation of the ADA.

40. Riverside's terminating Ms. McClarigan was done with reckless indifference to Ms. McClarigan's federally protected rights under the ADA.

41. Riverside's terminating Ms. McClarigan in violation of the ADA was the direct and proximate cause of her suffering lost wages, increased out-of-pocket medical expenses caused by her loss of health insurance, and the humiliation and emotional distress caused by losing her job.

WHEREFORE, the Plaintiff, Cynthia McClarigan, by counsel, moves this Court for the following relief against Riverside:

42.     Enjoin Riverside from engaging in the unlawful employment practices described in this Complaint. 42 U.S.C. §2000e-5(g).

43.     Award Ms. McClarigan backpay, as the evidence shows the amount to which she is entitled. 42 U.S.C. §2000e-5(g).

44.     Award Ms. McClarigan compensatory and punitive damages in the total amount of $300,000.00. 42 U.S.C. §1981a(b)(3)(d) and 42 U.S.C. §1981a(b)(1).

45.     An award of her taxable litigation costs and her reasonable attorney's fees expended. 42 U.S.C. §2000e-5(k).

46.     The Plaintiff demands a trial by jury on all the issues so triable.

**CYNTHIA J. MCCLARIGAN**

By: /s/ Michael L. Donner, Sr.
     Of Counsel


Michael L. Donner, Sr., Esq. (VSB No. 40958)
Sean R. Mackin, Esq. (VSB No. 93031)
SETLIFF LAW, P.C.
4940 Dominion Boulevard
Glen Allen, VA 23060
Telephone: (804) 377-1260
Facsimile: (804) 377-1280
mdonner@setlifflaw.com
smackin@setlifflaw.com
*Counsel for Plaintiff Cynthia McClarigan*